# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

EDITH SANDERS *on behalf of* C.O.,

Plaintiff,

DECISION & ORDER

-vs-

12-CV-6179-CJS

MICHAEL J. ASTRUE,

Defendant.

## APPEARANCES

For Plaintiff:                          Karen S. Southwick, Esq.
                                        Olinsky Law Group
                                        300 South State Street
                                        Suite 420
                                        Syracuse, NY 13202
                                        315-701-5780

For Defendants:                         Kathryn L. Smith, A.U.S.A
                                        U.S. Attorney's Office
                                        100 State Street, Fifth Floor
                                        Rochester, NY 14614
                                        585-263-6760

## INTRODUCTION

**Siragusa, J.** Edith Sanders ("Plaintiff") brings this action on behalf of her daughter, C.O., claiming that the Commissioner of Social Security improperly denied her application for Supplemental Security Benefits ("SSI") pursuant to Title XVI of the Social Security Act. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was erroneous because it was not supported by substantial evidence in the record. The Commissioner found that C.O. was not disabled because her condition did not meet or

equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings), or have an impairment or combination of impairments that functionally equaled the Listings. R. 12–24. Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for a rehearing pursuant to the fourth sentence[1] of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for benefits on behalf of her minor daughter, C.O., on August 24, 2009, alleging disability since July 13, 2008. R. 157. Plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on November 2, 2010, which was adjourned to permit her to obtain legal representation. R. 29-35. The ALJ continued the hearing on April 8, 2011, at which Plaintiff was represented by counsel and both she and her daughter testified. R. 36–55. In a decision dated July 13, 2011, the ALJ found that Plaintiff was not disabled. R. 12–24. The Appeals Council denied Plaintiff's request for review on February 14, 2012. R. 1-3. Plaintiff filed this appeal pursuant to 42 U.S.C. 405(g). Compl., Apr. 8, 2012, ECF No. 1.

## STANDARD OF REVIEW

The case is before the Court pursuant to 42 U.S.C. §§ 405(g), which grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2010). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *see also Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 149, 117 S. Ct. 1953, 138 L. Ed. 2d 327 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting interferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curium*)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003); *see also Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo*).

Here, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the

pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

The Social Security Administration has established a three-step sequential evaluation process for an ALJ to determine whether an individual under the age of 18 is disabled. 20 C.F.R. §416.924(a). The first step is to determine whether claimant is engaging in substantial gainful activity as defined by the Code of Federal Regulations ("CFR"). 20 C.F.R. §416.972. If the claimant is engaging in substantial gainful activity, the claimant is not disabled. If the claimant is not involved in substantial gainful activity, the ALJ will determine if the claimant has an impairment or combination of impairments that is severe. In order for an impairment to be severe, it must be more than a slight abnormality or combination of slight abnormalities that causes minimal functional limitations. 20 C.F.R. §416.924(c). If the impairment(s) is severe, the ALJ considers whether it meets, medically equals, or functionally equals the listings as outlined in the CFR. Functional equivalency is evaluated by considering six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1)(i-iv). The ALJ must compare the appropriateness, effectiveness and independence of the claimant against other children of the same age without impairments. 20 C.F.R. §416.926a(b).

To functionally equal the listings, C.O.'s impairment or combination of impairments must result in "marked" limitations in two or more domains of functioning or an "extreme" limitation in at least one domain. 20 C.F.R. §416.926a(d). If there is such an impairment(s),

4

and it meets the duration requirement, the child will be found to be disabled. 20 C.F.R. §416.924(a)-(d).

A child has a "marked" limitation in a domain of functioning when his or her impairment "interferes seriously" with the ability to independently initiate, sustain or complete activities. 20 C.F.R. §416.926a(e)(2). A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning which translates to at least two, but less than three, standard deviations below the mean on standardized tests. 20 C.F.R. §416.926a(e)(2)(i). An "extreme" impairment interferes "very seriously" with one's ability to independently initiate, sustain or complete activities. An "extreme" limitation also means a limitation that is "more than marked." "Extreme" is the rating given to the worst limitations. However, an "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning expected on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. §416.926a(e)(3).

### ANALYSIS

Plaintiff raises three issues on appeal: (1) the ALJ committed harmful error by failing to properly develop the record; (2) the ALJ's credibility assessment is unsupported by substantial evidence; and (3) the ALJ's determination that Claimant's impairments were not functionally equivalent to the listings was unsupported by substantial evidence. The Court will address each in the order raised.

#### *Developing the Record on Appeal*

Plaintiff contends that at the hearing, she testified that C.O. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and prescribed Metadate, and that she

was being treated by psychologist[2] Olivia Chiang, Ph.D., at Rochester General Hospital ("RGH") approximately every two months. R. 44–45. The ALJ requested records from RGH on August 19, 2010. R. 264. In an undated response, received by the Commissioner on August 26, 2010, RGH responded[3] that,

> [w]e are unable to respond to the attached request. The information you are requesting is not available in the patients['] Medical Record maintained by the Health Information Management Department.
>
> For further assistance in obtaining visit information check with the outpatient department(s) listed below. You may call the Information Desk at 922-4000 to contact these departments by phone.
>
> A copy of your request … had not been forwarded to departments listed below.…
>
> Rochester General Pediatric Association Phone # 922-3749.

R. 262. The record contains no indication that the ALJ followed up with RGH or Rochester General Pediatric Association.

The Commissioner responds to this argument by pointing out that at the hearing, Plaintiff's counsel made no mention of missing evidence, and informed the ALJ that he was waiting for additional information from Dr. Chiang. R. 54. The exchange was as follows;

> ALJ: Okay with the exception of the document you're going to electronically file today, is there anything else to [sic] any evidence?
>
> ATTY: Well, judge we are waiting on records from Rochester General, that's Dr. Ching [sic], the Psychiatrist [sic].
>
> ALJ: Okay. Are you expecting them shortly, two weeks or more or what?
>
> ATTY: I think we should definitely have them within two weeks.
>
> ALJ: Okay so April 22 for Dr. Ching's [sic] record.… Okay if things don't go to plan, your attorney can send me a letter and we'll deal with that.

---

[2] Although Plaintiff stated that Dr. Chiang was a psychiatrist, the remainder of the Record, especially Dr. Chiang's own signature, shows she is, instead, a Ph.D.

[3] At oral argument, Plaintiff's counsel detailed that although the response from RGH did not specify that it was in reaction to the ALJ's request, it most likely was.

WIT: They're pretty good. When I ask them for something they give it to me. They've had her for a long time.

ALJ: Okay we're all set and off the record.

R. 54–55.

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.…" *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). Accordingly, an ALJ "generally has an obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Plaintiff maintains that even when a claimant is represented by counsel, it remains the Social Security Administration's burden to fully develop the record. That view is supported by *Andrews v. Astrue*, in which the district court wrote:

> [T]he onus to develop the record at the administrative level is not entirely on a claimant. In light of the remedial intent of the Social Security statute, and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty to develop the medical record if it is incomplete and this duty extends to all claimants, even those represented by counsel. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)….

*Andrews v. Astrue*, Civ. No. 7:10-CV-1202 (RFT), 2012 U.S. Dist. LEXIS 117956 (N.D.N.Y Aug. 21, 2012). Plaintiff's argument also gains support from the *Tejada* case, in which the Second Circuit wrote:

> By statute, the ALJ was required to develop Tejada's complete medical history for at least a twelve-month period if there was reason to believe that the information was necessary to reach a decision. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(G) (1994); 20 C.F.R. § 416.912(d)(2) (1998). Moreover, "it is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)).

*Tejada*, 167 F.3d at 774.

The Commissioner counters that only when the evidence he receives from a medical source is insufficient to make a disability determination is the he required to re-contact the medical source, citing 20 C.F.R. § 416.912(e). That subdivision, however, concerns obtaining a consultative examination. The preceding subdivision, (d), provides as follows:

> (d) Our responsibility. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

> (1) Every reasonable effort means that we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. The medical source will have a minimum of 10 calendar days from the date of our followup request to reply, unless our experience with that source indicates that a longer period is advisable in a particular case.

> (2) By complete medical history, we mean the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application. If you say that your disability began less than 12 months before you filed your application, we will develop your complete medical history beginning with the month you say your disability began unless we have reason to believe that your disability began earlier.

20 C.F.R. § 416.912(d)(1) & (2).

From the Court's review of the case law and regulations in this area, as well as the Record on this appeal, the Commissioner's duty extended to obtaining records from Dr. Chiang for at least the 12 month period prior to C.O.'s application for benefits, which she submitted on August 24, 2009. There is only one report in the Record from Dr. Chiang which is dated April 25, 2011. R. 276. In that Medical Source Statement, Dr. Chiang does

not indicate when she began seeing C.O., but Plaintiff's testimony was that C.O. interacts with Dr. Chiang every other month. R. 45. The ALJ gave great weight to Dr. Chiang's opinion in making his decision. R. 19. However, as indicated the only report from Dr. Chiang identified in the Record is the one from 2011, despite the fact that she was C.O.'s treating psychologist. On the April 2011 report, Dr. Chiang indicated her address was "RGPA, 1425 Portland Ave – 228, 14621." R. 276. The initials, "RGPA," could match those of the Rochester General Pediatric Association, and the address matches that of RGH. *See* R. 262 (memo from RGH indicating a lack of records and suggesting that the ALJ contact Rochester General Pediatric Association).

In view of the important role Dr. Chiang played in C.O.'s treatment, the Court finds that "there was reason to believe that the information was necessary to reach a decision," *Tejada*, 167 F.3d at 774, and, therefore, it was error for the ALJ to fail to re-contact Rochester General Pediatric Association to determine whether that organization had relevant records, especially concerning Dr. Chiang's treatment notes. 20 C.F.R. § 416.912(d). Because the records are from a treating psychologist, because counsel indicated that they exist, and because the ALJ was under a duty to follow through to ensure a complete record, this error requires reversal of the ALJ's decision and remand for compliance with the Commissioner's regulation.

### The ALJ's Credibility Assessment

Plaintiff argues that by summarizing her testimony in three sentences, then turning to the medical record, the ALJ erred, because, "[w]here there is conflicting evidence of Claimant's symptoms, 'the ALJ must make credibility findings.'" Pl.'s Reply Mem. of Law at 5, Jan. 25, 2013, ECF No. 11 (quoting *Gates v. Barnhart*, No. 05-CV-673, 2, 2008 U.S.

Dist. LEXIS 49815, *13–14 (W.D.N.Y. Jun. 30, 2008), *aff'd sub nom Gates v. Astrue*, No. 08-3681-cv, 2009 U.S. App. LEXIS 15643 (2d Cir. Jul. 16, 2009). Plaintiff contends that the ALJ "failed to evaluate her testimony using any of the required factors," in violation of 20 C.F.R. § 416.928(a). That section states,

> (a) Symptoms are your own description of your physical or mental impairment. If you are a child under age 18 and are unable to adequately describe your symptom(s), we will accept as a statement of this symptom(s) the description given by the person who is most familiar with you, such as a parent, other relative, or guardian. Your statements (or those of another person) alone, however, are not enough to establish that there is a physical or mental impairment.

20 C.F.R. § 416.928(a). Further, Plaintiff argues that the ALJ, "failed to determine whether Claimant's medically determinable impairments of asthma and ADHD could reasonably be expected to produce her symptoms as required by 20 C.F.R. § 416.929(c)(1)." Pl.'s Mem. of Law at 14. That section states,

> (c) Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work or, if you are a child, your functioning. — (1) General. When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work or, if you are a child, your functioning. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you. We also consider the medical opinions of your treating source and other medical opinions as explained in § 416.927.

20 C.F.R. § 416.929(c)(1). In that regard, the ALJ made the following observations about Plaintiff's testimony:

> The claimant's mother Edith Sanders testified that her daughter suffers from anger outbursts. She is difficult to control in school and receives numerous suspensions. Ms. Sanders also stated that the claimant receives mental

health counseling to address her ADHD symptoms including excessive crying, fidgeting, feeling hyper, inability to control her behavior and anger outbursts. In addition to her mental health problems, the claimant allegedly suffers from asthma....

R. 16. Other than this summary, the ALJ's decision does not address the requirements of the Commissioner's regulations requiring that he evaluate Plaintiff's testimony and assess her credibility and the intensity and persistence of her symptoms on the child's functioning.

The Court also notes, in connection with this issue, that the ALJ wrote that he gave, "great weight to the opinions set forth by the claimant's teacher Ms. Moore, school counselor Ms. Keiffer and treating psychologist Dr. Ching [sic] as well as to the opinion of the consultative examiners Dr. Boehlert and Dr. Finnity." R. 19. As both Plaintiff's counsel and the Court pointed out at oral argument, the ALJ did not explain how he resolved the obvious conflicts among those sources and concluded that, although Dr. Chiang rated C.O. as having marked limitations in three out of five factors in two functional areas, the ALJ chose only to find that C.O. had marked limitations in one functional area of the two identified by Dr. Chiang. Since he did not explain how he arrived at that decision, including how he assessed Plaintiff's credibility, the case must be returned for the ALJ to properly assess those factors required by the Commissioner's regulations.

**Claimant's Impairments**

Finally, Plaintiff contends that the ALJ improperly assessed the evidence with regard to the six functional equivalence domains by erroneously determining that C.O. "'has less than marked limitation in attending and completing tasks.'" Pl's Mem. of Law at 15 (quoting R. 21). The Court notes that Plaintiff testified that C.O., is "having distraction; a lot of distraction," R. 46, and that "[s]he's easily distracted in class, outside of class," R. 50.

Combined with the evidence from other sources, Plaintiff argues that C.O. has a marked limitation in the domain of attending and completing tasks.

Because the ALJ failed to evaluate Plaintiff's testimony, or take it into account in making his findings, and failed to explain how he gave "great weight," R. 19, to Dr. Chiang's opinion, yet failed to accept her conclusion that C.O. had a marked limitation in this functional area, the most prudent course of action is to permit the ALJ to revisit this matter to reassess whether, in light of the evidence he did consider, and the evidence from Plaintiff's testimony, which he did not consider, he finds that C.O. has a marked limitation in the domain of attending and completing tasks. As the ALJ stated in his decision, "[t]o functionally equal the listings, the claimant's impairment or combination of impairments must result in 'marked'' limitations in two domains of functioning or an 'extreme' limitation in one domain (20 CFR 416.926a(d))." R. 13. Since the ALJ already determined that C.O. "has a marked limitation in interacting and relating with others," R. 21, should he, upon reassessment, determine that C.O. also has a marked limitation in the domain of attending and completing tasks, then he would necessarily find her disabled. Consequently, the Court must return this case to the ALJ to reassess his determination in the functional area of attending and completing tasks.

The same reasoning applies to C.O.'s ability to care for herself. Again, the ALJ did not assess Plaintiff's testimony in this functional area. For example, in the following questions and answers, Plaintiff testified about C.O.'s inability to care for herself:

> Q What about in the morning or at night with getting dressed, bathing doing things like doing what she's told. Do you ever have difficulty with those things?
> A Yes.

Q Does she require a lot of reminders?

A She needs a lot of reminders. Consistent reminders. I can tell her say C[] go take a bath so you can get ready for school. She'll sit and run around the whole house before she does it and then at night, trouble sleeping. I can put her in a bed every night. Her bed time is at 8:00. I put her in the bed she lays there. C[]'s not going to sleep until like maybe 11:30, 12:00 sometimes a quarter [']til one, so; then in the morning I have to fight with her to get her clothes on so she can get on time for the bus.

The [sic] hyperness and stuff because she doesn't take her medicine until she gets to school so that's after breakfast in the morning and then at night, the medicine wear off so you're having a lot more trouble difficulties at night and even in the morning when I'm getting her ready for school because she can't take her medicine til she gets to school.

R. 48–49. This domain also encompasses, "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k). In that regard, Plaintiff testified:

Q And while she's in school, she has to sign a special behavior paper everyday?

A Yes, all day from the morning to the time she leaves in the afternoon.

Q What brought that about?

A Because of the behavioral in school and the [sic] antsiness. She wasn't going to the classroom by herself it wasn't working, so she has to have someone to go with her up to the classroom to make sure she gets in her classroom safe and back after school, and they go walk down with her to get her meds and stuff and make sure she's okay.

Q And she has also had to do some anger management?

A Yes, she is still in the anger management classes, yes.

Q What brought that about?

A Her temper not sitting down; getting mad/ throwing stuff, tearing up the principal[']s office, the teachers' room, Ms. Keefer's classroom and it takes usually if she's not calmed down, they'll call me on the phone. It takes like an hour or so to calm her down. Once she's calmed down the principal interacts

with her to make sure she's safe. If they feel she's not safe, he'll have her stay in his office and do her work or she'll go to the ATS room that's a suspension room for the rest of the day, and they'll work with her.…

Q What about you mentioned anger. Does she have difficulty with her emotions with crying?

A Yes crying a lot; mad about things but you have to really sit down and listen to her because if you don't listen to her then she'll think you're not listening to her. It's just that it's the angriness, she won't sit still. You have to really guide her like if I sit her here for a minute about 60 seconds later, then the smiling, the laughing, you know?…

Q Has she ever been suspended or sent to you mentioned, the in-school suspension?

A Numerous times. Numerous a lot of times she's been suspended.

Q What were those suspensions for?

A Fighting in class, swearing at the teacher, hollering a the principal, Ms. Keefer. I mean just won't cooperate at all. She's had numerous suspensions in school on the bus, and that's basically it.

R. 43–44, 46, 47. The ALJ took none of this testimony into consideration in making his assessment in the functional domain of C.O.'s ability to care for herself, maintain a healthy emotional and physical state, and how she copes with stress and changes. Had he done so, he may have determined that C.O. has a marked limitation in this domain.

Finally, this reasoning further applies to the domain of health and physical well-being. Again, the ALJ did not take into account Plaintiff's testimony in this regard:

Q She also has asthma?

A Yes, she has asthma.

Q So she uses an inhaler?

A Yes.

Q Does she take any medications, too?

A She takes Singulair at night every night before she goes to bed. I think it's 10 milligrams if I'm not mistaken with the Singulair then she takes two puffs twice a day on her flow vent. She takes Albuterol as needed, she has a nebulizer at home so just in case she goes into a small asthma attack, but if

it gets severe I have to take her to Rochester General so they can give her a treatment and she has the Eczema with the asthma and she's also in the asthma program through Rochester General. They have a camp that they have every July or August for them. They stay at a camp site at a log cabin for three days, it's a asthma camp you got to sign in on it and then all the doctors and everybody else be there with them for three days on the camp site. They help you to know basically with the parents or whoever is acting with the child, they teach you more stuff to cope with your child's asthma.

R. 47–48. Upon a rehearing, the ALJ can properly apply the Commissioner's regulations, rulings, *etc.*, to come to a conclusion about C.O.'s disability.

## CONCLUSION

For the reasons stated above, the Commissioner's motion, ECF No. 9, is denied and Plaintiff's motion, ECF No. 7, is granted to the extent that the Commissioner's decision is reversed and the case is remanded for a rehearing pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated: March 13, 2013
Rochester, New York

ENTER:     /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge